UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CORNELL HENLEY, JR., <br><br> Plaintiff, <br><br> v. <br><br> RON GAYDOS, et al., <br><br> Defendants. | CAUSE NO.: 2:17-CV-307-TLS |

**OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion for Summary Judgment [ECF No. 73], Defendants' Objection and Motion to Strike Plaintiff's Summary Judgment Motion and Corresponding Exhibits [ECF No. 75], and Defendants' Motion for Summary Judgment [ECF No. 77]. Plaintiff Cornell Henley, Jr., a prisoner without a lawyer, was granted leave to proceed on a claim against Ron Gaydos, Ryan Taylor, Jeremy Juliano, and John Widup for subjecting him to raw sewage gas while housed at the Porter County Jail between July 3, 2015, and April of 2016, in violation of the Eighth and Fourteenth Amendments. ECF No. 14; ECF No. 41. Plaintiff and Defendants have each filed a motion for summary judgment. ECF No. 73; ECF No. 77. Plaintiff received notice [ECF No. 79] of the consequences of failing to respond to Defendants' Motion [ECF No. 77], but he did not file a response. Each of these pending Motions [ECF Nos. 73, 75, 77] is now ripe for decision.

**MOTION TO STRIKE**

Defendants have moved to strike Plaintiff's motion for summary judgment because it does not comply with the requirements of Federal Rule of Civil Procedure 56 or Northern District of Indiana Local Rule 56.1. Plaintiff's motion does not contain a statement of material

facts, and it does not include factual assertions that are supported by citations to the record. ECF No. 73. Instead, Plaintiff references generally the eighty-seven pages of exhibits submitted with his summary judgment motion. *Id.* at 1–2. All litigants, even those without lawyers, must follow procedural rules. *McCurry v. Kenco Logistics Svcs., LLC*, 942 F.3d 783, 787 n.2 (7th Cir. 2019). It is not the Court's job to search these exhibits to find support for the assertions that Plaintiff makes in his summary judgment motion. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). Because Plaintiff's motion does not comply with Federal Rule of Civil Procedure 56 or Local Rule 56.1, the motion to strike will be granted.[1]

## FACTS

Turning now to Defendants' motion, the undisputed material facts before the Court are as follows:

Plaintiff arrived at the Porter County Jail on June 3, 2015, and was housed in Satellite C, housing unit 8 ("C-8"). ECF No. 78-1; ECF No. 78-2. At that time, criminal charges were pending against Plaintiff; he was sentenced on April 11, 2016. ECF No. 78-1; ECF No. 78-11.

The Porter County Jail is located next to an asphalt plant and a cardboard factory. ECF No. 78-4 ¶ 3. The proximity to these industries and wind conditions can result in odors at the Porter County Jail. *Id.* Prior to August 2015, there were incidents where the traps in floor drains dried up and the drains released a sewer smell. *Id.* ¶ 4. These were isolated occurrences, and the problem was easily addressed by adding water to the floor drain traps. *Id.*

---

[1] Defendants note that some of the exhibits that Henley submitted contain personal identifiers. Because the motion is being stricken, the concern regarding personal identifiers is moot.

In August 2015, Captain Taylor received reports that a sewer odor was occurring in Satellite C housing units. *Id.* ¶ 5. At first, the odor appeared in different cell blocks at different times, and it would dissipate very quickly. *Id.* ¶ 6. Each time a sewer odor was reported, jail staff investigated, but the odor was usually gone by the time staff arrived, making it difficult to pinpoint the source of the odor. *Id.* ¶ 7. Each time he received a report, the problem was addressed, as it had been in the past, by adding water to the drains. *Id.* ¶ 8.

Captain Taylor, however, received increasingly frequent reports of a sewer odor in the Satellite C housing unit. *Id.* In response, on August 10, 2015, or August 11, 2015, jail staff poured water down floor drains in the Satellite C-4 housing unit ("C-4") and all drains around the air handlers in the first and second floor mechanical closets in Satellite C. *Id.* ¶ 9. Based on past experience, Captain Taylor thought this would eliminate the odor. *Id.* ¶ 10.

On August 12, 2015, the odor returned. *Id.* ¶ 11. At this point, Captain Taylor called an outside contractor, Mechanical Concepts, to address the problem. *Id.* Mechanical Concepts replaced a leaking pipe and backwashed the toilets. *Id.* ¶ 12. The problem appeared to be resolved. *Id.* ¶ 13.

However, on September 28, 2015, Captain Taylor received more reports that there was a sewer odor. *Id.* He called Mechanical Concepts. *Id.* On October 2, 2015, a plumber looked into the sewer odor in Satellite C but could not identify the problem. *Id.* ¶ 14. On October 5, 2015, a plumber returned to further investigate the sewer odor in C-4. *Id.* ¶ 15.

During this time period, a new wastewater lift station was being constructed outside the Satellite C housing unit, and there was speculation that the construction of the lift station could be causing the sewer odor. *Id.* ¶ 16. On October 9, 2015, Captain Taylor made contact with Mike Jabo of DLZ Construction, the company in charge of the lift station project, to ask if the project

3

could be causing the odor. *Id.* ¶ 17. They discussed the possibility that the odor might be related to issues with the sewer screen. *Id.* ¶ 18. A repair company was called out to assess this issue on the same day. *Id.*

On October 12, 2015, the issue had not been resolved, and jail staff were asked to fill all floor drains in C-4 with water, which eliminated the odor. *Id.* ¶ 19. Captain Taylor was advised that installing trap seals on the floor drains in C-4 would likely prevent the sewer odor. *Id.* ¶ 20. On October 19, 2015, Captain Taylor obtained approval from Chief Deputy Jeff Biggs to have the new trap seals installed in all the floor drains in C-4. *Id.* ¶ 20.

Although it was believed that the new trap seals would resolve the issue, the next day, Captain Taylor met and spoke with representatives from Hasse Construction, DLZ, and Duperon (the companies involved in the lift station project) regarding the sewer odor. *Id.* ¶ 21. At that meeting, they discussed the possibility that the odor might be caused by the evacuation fan in the wastewater lift station creating suction and drying out the traps in the Satellite C floor drains. *Id.* This was a working theory, and all agreed to investigate the matter. *Id.*

On October 21, 2015, Mechanical Concepts installed 2 of 3 trap seals in C-4. *Id.* ¶ 22. On October 26, 2015, the odor was reported again. *Id.* ¶ 23. Jail staff responded by pouring water down the drains to address the problem temporarily until the third trap seal could be installed. *Id.* ¶ 23. The next day, the third trap seal was installed. *Id.* ¶ 24.

Captain Taylor did not receive any further complaints of a sewage smell until November 12, 2015. *Id.* ¶ 25. He emailed Mike Jabo of DLZ, Sheriff Reynolds and Jail Commander Lawrence regarding the issue that same day. *Id.* ¶ 25. The following day, Captain Taylor spoke to Mike Jabo from DLZ on the phone about possible causes of the continued problem. *Id.* ¶ 26. They agreed that the matter required further investigation by an outside company. *Id.* ¶ 26.

On November 13, 2015, Captain Taylor also spoke to Mike Martin at Mechanical Concepts about the sewer odor and scheduled an appointment for him to investigate on November 16, 2015. *Id.* ¶ 27. Following the on-site visit on November 16, 2015, Mike Jabo called Captain Taylor and advised that he had a possible cause of the odor, and that they were going to have the jail's system checked out. *Id.* ¶ 28. Mechanical Concepts was asked to hold off on further testing pending the results of Mike Jabo's investigation. *Id.* It is not clear what work was performed, but it was believed to have successfully resolved the issue. *Id.* ¶ 29.

Unfortunately, on December 22, 2015, Captain Taylor received reports that the odor returned. *Id.* ¶ 30. Captain Taylor emailed Mike Jabo, and Mike Jabo sent an inspector the same day. *Id.* The next day, Captain Taylor had a telephone conference with DLZ and Mechanical Concepts regarding the results of the inspection. *Id.* ¶ 31. They decided that there needed to be more thorough testing of the jail's sewer system. *Id.* ¶ 32.

On December 29, 2015, Mechanical Concepts attempted to identify leaks in the sewer vents by performing a "peppermint test" in housing units C-5 and C-6. *Id.* ¶ 33. The test was inconclusive because the peppermint odor dissipated too quickly for Mechanical Concepts to pinpoint the leak. *Id.* ¶ 34.

Since the peppermint test did not produce definitive results, on December 30, 2015, Mechanical Concepts investigated whether the exhaust vent on top of housing unit C-7 was causing the issue. *Id.* ¶ 35. Mechanical Concepts took apart the fan and examined it but could not identify a cause of the odor. *Id.* ¶ 35–36.

Therefore, it was determined that another test to identify the leak on the sewer vent lines in Satellite C - a "smoke test" – should be performed. *Id.* ¶ 36. The smoke test allows visual identification of leaks. *Id.* ¶ 37. The smoke test was performed on January 7, 2016. *Id.* ¶ 38. The

5

smoke test lead to the discovery of a cracked vent line on a toilet in C-6 and several clean out caps in the pipe chases that were allowing odors to escape. *Id.* ¶ 38. Mechanical Concepts repaired the cracked vent pipe, replaced seven clean out caps, and ordered additional clean out caps to be installed later. *Id.* ¶ 39.

A second smoke test, performed on January 18, 2016, confirmed that all leaks had been repaired. *Id.* ¶¶ 40–41. Captain Taylor learned that the sporadic and temporary sewer odors which came and went in the different housing areas in Satellite C had been caused by the gases escaping from the cracked vent pipe and the clean out caps and then entering the return air ventilation system. *Id.* ¶ 42. There have been no further issues with this odor in Satellite C since January 7, 2016. *Id.* ¶ 52.

During the relevant time period, Captain Taylor was the individual responsible for both receiving inmate grievances and handling building maintenance. *Id.* ¶¶ 44–45. Plaintiff filed many grievances about the sewer odor between July 2015 and December 2015. *Id.* ¶ 46. Each of the grievances were responded to by staff. *Id* ¶ 46; ECF No. 78-7. It was not until Plaintiff filed his ninth grievance on this issue, on November 21, 2015, that he mentioned that he believed that the odor was causing him to have headaches. ECF No. 78-7 at 6. That grievance was responded to with a notation that the issue was being addressed. *Id.* His next five grievances on this issue again made no mention of any health concern. *Id.* at 5–7. Plaintiff did not seek medical care for any health concern that he links to the sewage exposure while incarcerated at the jail. ECF No. 78-4 ¶ 56; ECF No. 78-10. Captain Taylor received no grievances from other inmates indicating that the odor was making them ill. ECF No. 78-4 ¶ 51.

Captain Taylor never ignored inmate complaints. *Id.* ¶ 50. He also kept jail staff and administrators, including Captain Jeremy Juliano and Assistant Jail Commander Ron Gaydos, apprised of the efforts to address the odor. *Id.* ¶ 44; ECF No. 78-6 ¶¶ 5–6; ECF No. 78-5 ¶ 7.

Assistant Commander Gaydos was aware of how the staff was handling the situation, and that there were ongoing efforts to address the problem by outside companies. ECF No. 78-6 ¶¶ 7–12, 15. Assistant Commander Gaydos was not contacted by Plaintiff regarding his concerns about the sewer odor. *Id.* ¶ 21.

Captain Juliano did receive two grievances from Plaintiff. ECF No. 78-5 ¶ 4. At that time, the matter was still being investigated by jail administration and outside staff. *Id.* ¶ 5. Captain Juliano responded to the grievances by indicating that the matter was being addressed. *Id.*

John Widup retired from the Porter County Jail in January of 2014 — prior to Plaintiff's arrival on July 3, 2015 — and did have any contact with Plaintiff during the relevant period. ECF No. 78-3 ¶¶ 2–7.

**SUMMARY JUDGMENT STANDARD**

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion and identifying" the evidence that "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A party asserting that a fact cannot be or is genuinely disputed must

7

support the assertion by . . . citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In ruling on a motion for summary judgment, the Court must view all facts in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. The Court will not "make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Summary judgment is not a substitute for a trial on the merits or a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the Court's sole task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne*, 337 F.3d at 770. If a reasonable factfinder could find in favor of the nonmoving party, summary judgment may not be granted. *Id.*

## ANALYSIS

Defendants raise several arguments in their summary judgment motion. They argue that summary judgment should be granted in favor of John Widup and Ron Gaydos because they were not personally involved. They argue that summary judgment should be granted in favor of all Defendants because Plaintiff has not demonstrated that he was subjected to an objectively serious condition of confinement and because Defendants did not act objectively unreasonable under the circumstances. Finally, Defendants argue that they are entitled to qualified immunity.

At the screening stage of this case, it was unclear if Plaintiff was a pre-trial detainee or a convicted inmate. It is now clear that, for the majority of his stay at the Porter County Jail, he was a pre-trial detainee. As a pretrial detainee, Plaintiff's constitutional rights are derived from

the Fourteenth Amendment's Due Process Clause. *Burton v. Downey*, 805 F.3d 776, 784 (7th Cir. 2015). "[T]he Fourteenth Amendment's Due Process Clause prohibits holding pretrial detainees in conditions that amount to punishment." *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 856 (7th Cir. 2017) (quotation marks and citation omitted). "A pretrial condition can amount to punishment in two ways: first, if it is imposed for the purpose of punishment, or second, if the condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a Court permissibly may infer that the purpose of the government action is punishment." *Id.* A pretrial detainee can prevail by demonstrating that (1) Defendants "acted purposefully, knowingly, or perhaps even recklessly," and (2) Defendants' conduct was objectively unreasonable. *Miranda v. Cty. of Lake*, 900 F.3d 335, 353–54 (7th Cir. 2018) (citing *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472-74 (2015); *see also Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019) (extending *Kingsley's* objective inquiry to all Fourteenth Amendment conditions-of-confinement claims brought by pretrial detainees).

Beginning on April 11, 2016, Plaintiff was serving a sentence of confinement, and his claims during this period are therefore governed by the Eighth Amendment. The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). In evaluating such a claim, the Court conducts an objective and subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective inquiry asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id*. Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*,

9

590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). For the subjective inquiry, the prisoner must show Defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834.

Defendants argue that summary judgment should be granted in their favor because there is no evidence in the record that they acted purposefully, knowingly, or recklessly, and because their efforts to address the problem were objectively reasonable. ECF No. 78 at 18–20. The record before the Court demonstrates that Hensley complained only once about having a headache due to the sewer gases. He did not seek any medical care for his headache. And, even though he filed many grievances addressing the sewer gases, he did not mention any other health conditions in those grievances. Thus, no Defendant had knowledge that Plaintiff was suffering from anything other than a headache.

Furthermore, the record before the Court demonstrates that jail staff took action to correct the problem each time they became aware of it. Many of those efforts failed, but when an attempted repair was ineffective, Captain Taylor sought out professionals and collaborated with others to attempt to find a solution. The problem proved difficult to solve, but the evidence reflects diligent efforts to find a solution. Plaintiff produced no evidence from which a reasonable fact finder could conclude that, in response to their knowledge of the problem with sewage gases, any Defendant knowingly, recklessly, or purposefully ignored the problem. Likewise, there is no evidence before the Court from which a reasonable fact finder could conclude that the jail's response to the sewage gas problem was anything but reasonable. On the contrary, the only evidence before the Court shows that Captain Taylor diligently tackled a challenging problem that eluded more than one outside professional, and that he did not stop pursuing the matter until it had been resolved. Accordingly, even applying the less onerous

10

standard of the Fourteenth Amendment, summary judgment must be granted in favor of Defendants.[2]

## CONCLUSION

For these reasons, the Court:

(1) GRANTS Defendants' Objection and Motion to Strike Plaintiff's Summary Judgment Motion and Corresponding Exhibits [ECF No. 75];

(2) STRIKES Plaintiff's Motion for Summary Judgment [ECF No. 73];

(3) GRANTS Defendants' Motion for Summary Judgment [ECF No. 77]; and

(4) DIRECTS the Clerk to enter judgment in favor of Defendants Ron Gaydos, Ryan Taylor, Jeremy Juliano, and John Widup and against Plaintiff Anthony Cornell Henley, Jr.

SO ORDERED on September 2, 2020.

       s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

---

[2] Because summary judgment must be granted on this basis, Defendants' remaining arguments need not be addressed here.